**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA           :
                                   :
       -against-                   :
                                   :
ALDO MITCHELL,                     :
                                   :
                    Defendant.     :
------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __04/14/2021__
```

No. 96 Cr. 126 (JFK)

**OPINION & ORDER**

APPEARANCES

FOR DEFENDANT ALDO MITCHELL:
     Pro Se

FOR THE UNITED STATES OF AMERICA:
     Brandon D. Harper
     U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion by Defendant Aldo Mitchell seeking a sentence reduction to time served and his immediate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute.  The Government opposes Mitchell's motion as substantively meritless because he has not demonstrated the required "extraordinary and compelling reasons" for a reduction in sentence and because the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to his term of incarceration.

For the reasons set forth below, Mitchell's motion is DENIED.

## I.  Background

Unless otherwise noted, the following is taken from the materials the parties submitted, Mitchell's Presentence Investigation Report ("PSR"), revised as of October 10, 2000, the transcript of Mitchell's March 26, 2001 sentencing (ECF No. 844-1), and the Court's August 23, 2005 Opinion & Order denying Mitchell's 28 U.S.C. § 2255 petition to vacate, set aside, or correct his sentence, Mitchell v. United States, No. 04 Civ. 9672 (JFK), 2005 WL 2036029 (S.D.N.Y. Aug. 23, 2005).  In ruling on Mitchell's request, the Court has considered the arguments advanced in his motion (ECF No. 841), the Government's letter in opposition (ECF No. 844), and Mitchell's reply (ECF No. 845).

On June 17, 1999, Mitchell and eleven others were charged with a series of offenses related to their participation in a racketeering enterprise known as the 148th Street Organization, a violent drug gang that operated in Upper Manhattan from the late 1980s through June 1999. See Mitchell, 2005 WL 2036029, at *1.  On July 28, 2000, Mitchell was convicted by a jury of conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c); conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; and attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2. See id.  Mitchell's co-defendant, Irving Mason, was convicted of several similar offenses on the same day. See id.

Mitchell's sentencing occurred on March 26, 2001, during which the Court found a Guidelines sentencing range of 360 months' incarceration to life imprisonment.  (Sent. Tr. at 24:11-16.)  The Court sentenced Mitchell to a total term of 360 months in prison to be followed by three years of supervised release, explaining that "[t]he purpose of my sentence is to punish this defendant and to generally deter others."  (Id. at 25:9-26:15.)  On November 21, 2002, the Second Circuit affirmed Mitchell's and Mason's convictions. See United States v. Mitchell, 51 F. App'x 355, 358 (2d Cir. 2002).  To date, Mitchell has served approximately 21-and-a-half years of his sentence.  He is scheduled for release on June 27, 2027. See Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 13, 2021).

On May 7, 2020, Mitchell, proceeding pro se, filed a letter requesting his immediate compassionate release due to the COVID-19 pandemic.  (ECF No. 808.)  The Court ordered the Government to respond, and on June 5, 2020, it filed an opposition to Mitchell's request.  (ECF No. 814.)  On June 18, 2020, Mitchell submitted a reply brief in which he moved to withdraw his request for compassionate release.  (ECF No. 819.)  The Court granted Mitchell's request to withdraw his motion.  (ECF No. 823.)

3

On March 5, 2021, Mitchell, again proceeding pro se, filed a second motion seeking his immediate compassionate release. (ECF No. 841.)  As before, Mitchell's instant motion argues that he warrants release because of the COVID-19 pandemic. Mitchell's renewed motion also argues that his immediate release is appropriate because he was recently infected by the coronavirus and he is experiencing lingering effects, he has matured and made significant efforts at rehabilitation while in prison, and he is no longer a danger to the public.  Once again, the Court ordered the Government to respond.  (ECF No. 843.)  On March 24, 2021, the Government again opposed Mitchell's request on the grounds that no extraordinary and compelling reasons support his release which, in any event, would be inappropriate under the sentencing factors set forth in 18 U.S.C. § 3553(a). (ECF No. 844.)  The Government's opposition noted that, on February 4, 2021, Mitchell refused to be vaccinated against COVID-19.  On April 5, 2021, Mitchell filed a reply in which he reiterated his request for release and argued that he is similarly situated to certain other defendants to whom a small number of courts have ordered reductions in sentence.  (ECF No. 845.)

## II.  Discussion

### A.  Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment "upon motion of the defendant" provided the defendant has exhausted certain administrative requirements. 18 U.S.C. § 3582(c)(1)(A).  Under these circumstances, a court may reduce the defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors outweigh the extraordinary and compelling reasons warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (brackets, ellipsis, and internal quotation marks omitted) (quoting United States v. Ebbers, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. 2020)).

In the Second Circuit, the policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release, § 1B1.13 of the Sentencing Guidelines, "is not 'applicable' to

compassionate release motions brought by defendants," and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020). Accordingly, as the court in United States v. Harris, No. 15 Cr. 445 (PAE), 2020 WL 5801051 (S.D.N.Y. Sept. 29, 2020), explained:

> when assessing a motion brought directly by an imprisoned person rather than by the [Bureau of Prisons ("the BOP")], the Court is constrained neither by [§] 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."

Id. at *2 (footnote and internal citations omitted).

"[P]ro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).

### B.  Analysis

Mitchell argues that extraordinary and compelling reasons exist warranting his immediate release because he has amassed a remarkable record of rehabilitation and the COVID-19 pandemic poses undue health risks to him.  The Court is not persuaded.

As discussed below, none of the grounds for relief raised by Mitchell—individually or in combination—gives rise to extraordinary and compelling circumstances.  Accordingly, Mitchell's sentence cannot be reduced. See 18 U.S.C. § 3582(c) (stating "court[s] may not modify a term of imprisonment once it has been imposed" absent extraordinary and compelling circumstances); see also United States v. Mason, No. 96 Cr. 126 (JFK), 2021 WL 37576, at *4 (S.D.N.Y. Jan. 5, 2021), reconsideration denied, No. 96 Cr. 126 (JFK), 2021 WL 793835 (S.D.N.Y. Mar. 2, 2021) (denying similar compassionate release request by Mitchell's co-defendant).

### 1.  Rehabilitation

Mitchell argues that his sentence should be reduced because he is fully rehabilitated and not a danger to the community. The Court disagrees.

First, Mitchell has not demonstrated that he is no longer a danger to the public.  As the Court explained in an earlier decision denying a request by Mitchell for a reduction in sentence, Mitchell's offense conduct was "extraordinarily violent" and included an incident where he recruited several associates to rob a drug dealer at gunpoint during which the victim was abducted, held down and pistol-whipped, and subsequently shot in the back and legs by Mitchell's associates as the victim tried to flee. See United States v. Mitchell, No.

96 Cr. 126 JFK, 2012 WL 28495, at *3 (S.D.N.Y. Jan. 5, 2012).

Further, after Mitchell's arrest, he threatened to kill a co-

conspirator (whom he believed to be a cooperating witness) as

well as a New York City Police Detective. See id.  And, of

particular note here, Mitchell's disciplinary history while in

custody includes significant misconduct, such as introducing

marijuana into the facility, numerous instances of assault (most

recently in October 2012), possession of dangerous weapons (most

recently in April 2014), and destruction of property.  (ECF No.

844-2.)  Indeed, Mitchell's argument on this point relies

entirely on his self-proclamation that he is sufficiently

rehabilitated—Mitchell does not include any letters from

individuals without a personal stake in his request for release,

such as BOP officials or Mitchell's fellow inmates.

Second, the circumstances in the case law Mitchell cites

are readily distinguishable from his own.  For example, in

United States v. Panton, No. 89 Cr. 346 (LAP), 2020 WL 4505915,

at *1–2, 9 (S.D.N.Y. Aug. 4, 2020), the court found

extraordinary and compelling circumstances where the defendant

had served 30 years of a life sentence that the Probation

Department had opined as "unduly harsh" prior to sentencing and

which was imposed following the defendant's conviction for

conspiracy to possess and distribute approximately 41 kilograms

of heroin.  Notably, the defendant's prior criminal history was

minor (two low-level state misdemeanors, neither of which resulted in a prison term or even a probationary sentence), his offense conduct did not include violence, he had developed several serious health issues which made him more susceptible to COVID-19, and he had a stellar disciplinary record. See id. at *2-3, 7-9.  Likewise, in United States v. Millan, No. 91 Cr. 685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020), the defendant was a non-violent, first-time offender who had served more than 28 years of a life sentence imposed following his conviction for participating in a large-scale heroin distribution operation.  Despite having had no realistic hope of release, the defendant conducted himself as a model prisoner, demonstrated exceptional character, and received support for a sentence reduction from the BOP staff at his facility. See id. And, in United States v. Rodriguez, --- F. Supp. 3d ---, No. 00 Cr. 761 (JSR), 2020 WL 5810161, at *1, 4 (S.D.N.Y. Sept. 30, 2020), the court denied the defendant's request for immediate release, but concluded that, after 20 years' imprisonment, a reduction in sentence from life to one of 30 years with a lifetime of supervised release was appropriate where the defendant provided "[a]n extraordinary collection of letters— from fellow inmates, family, friends, and, most important, 27 members of the prison staff" that made clear that he was "wholly rehabilitated." See also United States v. Marks, 455 F. Supp. 3d

17, 27, 33 (W.D.N.Y. 2020) (noting numerous letters from individuals with no obvious stake in the defendant's request for a reduction in sentence—such as BOP officials and fellow inmates—which attested to the defendant's good works during his incarceration); but see United States v. Castillo, No. 03 Cr. 979 (KMW), 2021 WL 268638, at *5 (S.D.N.Y. Jan. 27, 2021) (finding rehabilitation not sufficiently extraordinary and compelling even where three BOP employees wrote positive letters of recommendation).

Accordingly, while Mitchell's efforts at rehabilitation are commendable, his criminal conduct in this case, together with his actions after his arrest, do not weigh in favor of immediate release.

### 2. COVID-19

Next, Mitchell argues that the deadly pandemic caused by the coronavirus, COVID-19, is an extraordinary and compelling reason for his release.  Once again, the Court disagrees.

As a preliminary matter, the Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People at Increased Risk, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Apr. 13, 2021); see also United States v. Park, 456 F. Supp. 3d 557, 560 (S.D.N.Y. 2020) ("The nature of prisons—crowded, with shared sleeping

spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).  And, on at least one occasion, it has ruled that the threat posed by the COVID-19 pandemic to a medically "high-risk" and non-violent individual constitutes "extraordinary and compelling reasons" warranting immediate release. See United States v. Smith, 454 F. Supp. 3d 310, 315 (S.D.N.Y. 2020) (granting release to non-violent 62-year-old who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see United States v. Seshan, No. 14 Cr. 620 (JFK), 2020 WL 2215458, at *4 (S.D.N.Y. May 6, 2020) (denying release to 47-year-old despite his "end-stage renal failure and hypertension" and the threat of COVID-19 because, inter alia, the defendant had a history of violence and granting the motion would disserve important § 3553(a) sentencing factors).

Here, Mitchell does not articulate a sufficiently extraordinary or compelling reason why the COVID-19 pandemic warrants his immediate release.  According to the Centers for Disease Control and Prevention ("the CDC"), older adults and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People at Increased Risk, Ctrs. for Disease Control

& Prevention, supra.  Mitchell's age and relatively minor health
issues do not qualify.  Mitchell is 50, significantly younger
than the CDC's former high-risk cutoff age of 65. See id.  And,
although Mitchell's medical records reflect that he suffers from
obesity—specifically, a body mass index (BMI) of 30.9—he does
not suffer from severe obesity (defined as a BMI of 40 or more)
or other sufficiently serious health conditions looked to by
courts in this context, such as cancer or immunocompromization.
See, e.g., Park, 456 F. Supp. 3d at 563–64 (granting release to
44-year-old with a documented history of respiratory issues,
including severe asthma and immune-compromising diseases);
Smith, 454 F. Supp. 3d at 315; but see, e.g., United States v.
Cajigas, No. 08 Cr. 391 (VM), 2020 WL 6625210, at *2 (S.D.N.Y.
Nov. 11, 2020) (denying release to 50-year-old with a BMI of 35
because, inter alia, "in light of his age . . . and the fact
that he presents no other health conditions, [the defendant's]
obesity and pre-diabetes do not satisfy the extraordinary and
compelling standard"); United States v. Kerrigan, No. 16 Cr. 576
(JFK), 2020 WL 2488269, at *3 (S.D.N.Y. May 14, 2020) (same for
non-violent 43-year-old with obesity and liver disease).

Further, even if Mitchell's health issues were sufficiently
serious—which the Court would be hard-pressed to conclude in
light of Mitchell's voluntary refusal of an approved vaccine
that is "safe and effective at preventing COVID-19," Benefits of

Getting Vaccinated, Ctrs. for Disease Control & Prevention,
https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-
benefits.html (last visited Apr. 13, 2021)—Mitchell's medical
records reflect that he tested positive for the disease in
January 2021 and, fortunately, he appears to have been
asymptomatic and to have recovered.  "[H]aving now contracted
the virus, the fundamental and overriding purpose of
[Mitchell's] request for immediate release—i.e., the desire to
remove him from an environment where he may be exposed to the
virus—is significantly less compelling." United States v.
Maldonado, No. 17 Cr. 530 (JFK), 2021 WL 1131411, at *3
(S.D.N.Y. Mar. 24, 2021); see also United States v. Rodriguez-
Francisco, No. 13 Cr. 233 (VB), 2021 WL 326974, at *2 (S.D.N.Y.
Feb. 1, 2021) (explaining that "a sentence reduction based on
the risk of contracting [COVID-19] again makes no sense" where
the defendant tested positive for the virus in December 2020
and, although he claimed "to have lingering effects," "his risk
of reinfection is extremely low" "because he has already had
(and fortunately recovered from) the disease") (citing the CDC's
website).  "The current COVID-19 pandemic is an unprecedented
worldwide catastrophe.  But it does not warrant the early
release of sentenced inmates in federal prisons convicted of
serious, dangerous offenses, like [the defendant], whose medical
conditions and risk of contracting the virus cannot be deemed

'extraordinary and compelling.'" <u>United States v. Mood</u>, No. 19
Cr. 113 (VB), 2020 WL 3256333, at *1 (S.D.N.Y. June 16, 2020)
(denying release to 53-year-old with diabetes, hypertension, and
obesity where "[t]here is no question that [the defendant] has
health issues, but his condition is stable and has been
effectively managed by routine monitoring and medication"); <u>see
also</u> <u>Mason</u>, 2021 WL 37576, at *3 (denying release to Mitchell's
52-year-old co-defendant who suffered from obesity and
borderline diabetes and hypertension).

### 3.  18 U.S.C. § 3553(a) Factors

Finally, and decisive here, even if Mitchell's efforts at
rehabilitation and the COVID-19 pandemic provided extraordinary
and compelling reasons for a sentence reduction, application of
the 3553(a) factors cripples his request and outweighs any
justification for early release.  Section 3553(a) requires "a
sentence sufficient, but not greater than necessary," to achieve
the purposes of sentencing. 18 U.S.C. § 3553(a).  When imposing
a sentence, courts must consider "the nature and circumstances
of the offense and the history and characteristics of the
defendant," as well as "the kinds of sentences available" and
"the need to avoid unwarranted sentence disparities among
defendants with similar records who have been found guilty of
similar conduct." <u>Id.</u> §§ 3553(a)(1), 3553(a)(3), 3553(a)(6).
Here, the factors that weigh in Mitchell's favor, such as the

need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), 3553(a)(2).  As with Mitchell's co-defendant, Irving Mason, the Court continues to believe that a sentence of 360 months' imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.  Indeed, as the Court recently explained in denying Mason's similar request for compassionate release, the offense conduct in this case "is among the most serious the Court has encountered: . . . a decade-long racketeering conspiracy that involved extraordinary acts of violence and brutality." Mason, 2021 WL 37576, at *4.  Accordingly, granting Mitchell the relief he seeks would disserve the above important sentencing factors, and his motion must be denied. Cf. id.; Seshan, 2020 WL 2215458, at *4.

**III.  Conclusion**

For the reasons set forth above, Defendant Aldo Mitchell's motion for a reduction in sentence is DENIED.

The Clerk of Court is directed to terminate the motion at

ECF No. 841.

**SO ORDERED.**

Dated:  New York, New York
        April 14, 2021

John F. Keenan
United States District Judge